**AMERICAN ELECTRONIC LABORATORIES, INC.,**
**Plaintiff,**

v.

**Paul S. DOPP, Defendant.**

**Civ. A. No. 4078.**

United States District Court,
D. Delaware.

Nov. 29, 1971.

---

S. Samuel Arsht and Lewis S. Black, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiff.

A. Richard Barros, of Brown, Shiels & Barros, Dover, Del., and Arnold I. Roth and Joel W. Sternman, of Rosenman, Colin, Kaye, Petschek, Freund & Emil, New York City, of counsel, for defendant.

## OPINION

LATCHUM, District Judge.

In this action American Electronic Laboratories, Inc. ("AEL"), a Pennsylvania corporation that maintains its principal place of business in Lansdale, Pennsylvania, seeks to recover damages in the sum of $1,510,950 from Paul S. Dopp ("Dopp") for breach of contract. The complaint alleges that Dopp failed to perform a contract, dated February 20, 1970 (the "AEL–Dopp contract"), in which he agreed to purchase from AEL 143,900 shares of Series B Voting Participating Convertible Preferred Stock ("Preferred Stock") of Butler Aviation International, Inc. ("Butler"). The action was originally commenced in the Superior Court of the State of Delaware in and for New Castle County in February, 1971 and thereafter removed by Dopp to this Court pursuant to 28 U.S.C. § 1441(a) based on diversity of citizenship of the parties. 28 U.S.C. § 1332(a) (1).[1]

### I. *Dopp's Motion For A Stay*

Dopp has moved for an order staying the present case until final disposition of an action now pending in the United States District Court for the Southern District of New York, entitled Dopp v. American Electronic Laboratories, Inc., et al., 71 Civil 2903 (the "New York action"). Dopp argues that this case and the New York action "involve the same fundamental issue" and that the present action should be stayed to avoid duplication of proceedings and the consequent waste of judicial resources and resources of litigants and attorneys.

The New York action is a derivative suit and was brought by Dopp on behalf of Butler against AEL, its officers and directors and Price Water & Co. some four months after the instant suit was filed. The New York complaint alleges violations of Section 17 of the Securities Act of 1933, 15 U.S.C. § 77q, Section 10(b) of the Securities & Exchange Act of 1934, 15 U.S.C. § 78j and Rule 10b–5 (17 C.F.R. 240.10b–5) promulgated thereunder, breach of contract and negligence in connection with allegedly false and inaccurate representations and warranties contained in accompanying financial statements and in an Agreement and Plan of Reorganization (the "AEL–Butler contract") entered into between Butler and AEL on November 20, 1969. Under the AEL–Butler contract, AEL transferred to Butler all the outstanding capital stock of Mooney Aircraft Corporation ("Mooney") in exchange for Butler issuing and transferring to AEL 150,000 shares of Butler's preferred stock. The relief sought in the New York action includes, *inter alia*, recission of the AEL–Butler contract and all acts and transactions pursuant thereto, the return of the preferred stock by AEL to Butler, the cancellation thereof and the recovery by Butler of damages from AEL and the other defendants at least in the amount of $7,000,000.

In the present suit, Dopp claims that the provision of Paragraph 1 of the AEL–Dopp contract which, in part, reads:

> "The shares are sold by AEL and purchased by Dopp under and subject to all restrictions and agreements as are imposed by * * * [the AEL–Butler contract] executed by AEL and Butler, said * * * [AEL–Butler contract] being hereby incorporated by reference and made a part hereof."

incorporated by reference all the agreements, including AEL's warranties and representations, which were contained in the AEL–Butler contract. Thus, Dopp's answer in the present suit sets out three affirmative defenses, each of which is based upon the allegation that AEL's warranties and representations in the AEL–Butler contract were untrue, inaccurate, contained misrepresentations and omitted to state material facts necessary

---

1. Dopp is a citizen of the State of New Jersey and personal jurisdiction was obtained over him initially pursuant to a mesne writ of foreign attachment. 10 Del.C. § 3506; Rule 4(b) (6), Rules of Delaware Superior Court, Del.C.Ann.

to make them not misleading. Further, Dopp contends that these defenses, if sustained, would relieve Dopp from his obligation to perform the AEL–Dopp contract sued upon here.

■ A comparison of Dopp's defensive allegations in this case with Butler's offensive allegations in the New York derivative action indicate that a possible fundamental identical issue is raised in both actions, viz., whether AEL's warranties and representations made in the AEL–Butler contract were untrue and inaccurate. However, on the present record and at this stage of the case, it is not at all certain that it will ever be necessary to determine the so-called "fundamental issue" in this case. This is so because there are a number of substantial issues, not present in the New York action, which must be preliminarily decided before reaching the fundamental issue which Dopp insists is common to both cases.

First, the parties are in sharp dispute whether the AEL–Dopp contract incorporated AEL's warranties and representations which are set forth in the AEL–Butler contract. As demonstrated by the arguments of the parties, the language of Paragraph 1 of the AEL–Dopp contract quoted above is ambiguous. In order to properly interpret the AEL–Dopp contract, this Court must consider the circumstances surrounding the making of the agreement, e. g., the situation of the parties thereto, the preliminary negotiations leading to its execution, the party who drafted the particular provision and the construction, if any, given to the contract by the parties. This calls for an evidentiary record which is not now before the Court. If it should appear from a proper and adequate record that AEL's warranties and representations in the AEL–Butler contract were not incorporated by reference in the AEL–Dopp contract, the fundamental issue in the New York action would be completely irrelevant to the disposition of this case.

■ Second, even upon the assumption that the warranties and representations made by AEL in the AEL–Butler contract were incorporated into the AEL–Dopp contract, AEL contends that Dopp has waived his right to rely upon the alleged falsity and inaccuracy of those representations and warranties. There is some slight evidence in the present record that Dopp, who ratified his contract to purchase Butler stock by several subsequent agreements extending the closing date, may have done so after he was aware of the allegedly false representations and warranties in the earlier AEL–Butler contract. It is well-settled that a party may waive his right to disaffirm or rescind a contract based on fraud by taking action with respect to the contract after discovering the fraud or learning of facts and circumstances from which such knowledge could be imputed to him. McCormick v. Lewis, 201 F.2d 861, 862 (C.A. 5, 1953), cert den. 346 U.S. 812, 74 S.Ct. 21, 98 L.Ed. 340 (1953); City of Reading v. Rae, 106 F. 2d 458, 462 (C.A. 3, 1939), cert. den. 308 U.S. 607, 60 S.Ct. 145, 84 L.Ed. 508 (1939); In Re Vandersee Corp., 173 F.Supp. 217, 218 (D.N.J.1959). The determination of this issue, which does not appear to be asserted frivolously, must await the further development of the evidentiary record in this case. This preliminary issue, being a substantial one and not present in the New York action, if resolved against Dopp, would not require this Court to reach the fundamental issue in the New York action.

The Court therefore concludes that Dopp's motion for a stay must on the present record be denied. Dopp's contention is too speculative because the claimed fundamental issue may never be decided in this case. For the Court to grant the discretionary stay requested, it would have to *assume* upon a wholly inadequate evidentiary record (1) that the representations and warranties in the AEL–Butler contract were incorporated into the AEL–Dopp contract and (2) that Dopp by his later agreements in extending the closing date of the AEL–Dopp contract was completely un-

aware of any misrepresentations and inaccuracies contained in the AEL–Butler contract. Neither of these assumptions are justified on the present record. It would amount to an abuse of discretion to grant the requested stay in view of the highly speculative nature of the Dopp contention that a possible fundamental issue in this case may be identical to the fundamental issue in the New York action. The stay will be denied.

## II. *Dopp's Motion To Transfer*

Alternative to his application for a stay, Dopp has moved to transfer this action to the United States District Court for the Southern District of New York (the "New York Court") pursuant to 28 U.S.C. § 1404(a). Dopp argues that the alternative relief of transfer would have the same beneficial effect of avoiding duplication of effort as a stay would have because the present case, upon transfer, could be consolidated with the New York action at least for discovery and pretrial purposes.

The transfer power of this Court is conferred by 28 U.S.C. § 1404(a) which reads:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought.*" (Emphasis supplied).

■ It is now well-settled that a Court is without power under § 1404(a) to transfer a case to a district where there is no proper venue, regardless of whether the defendant is willing to waive any venue objection in order to obtain transfer. Hoffman v. Blaski, 363 U.S. 335, 343–344, 80 S.Ct. 1084, 4 L. Ed.2d 1254 (1960); Aetna Cas. & Sur. Co. v. Singer-General Precision, Inc., 323 F.Supp. 1141, 1145 (D.Del.1971).

The question then becomes whether venue could be properly laid in the New York Court. Jurisdiction of this case is founded solely upon diversity of citizenship. This being so venue exists only in the judicial district where all the plaintiffs or all the defendants reside, or in which the claim arose.[2] 28 U.S.C. § 1391(a). Dopp is a citizen and resident of New Jersey; he does not reside in New York. Thus, venue would be proper in the New York Court only if AEL, the corporate plaintiff, were a New York resident.

28 U.S.C. § 1391(c) provides:

"(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

■ AEL is a corporation of the Commonwealth of Pennsylvania and is concededly a resident of that State. For the purpose of this motion the Court may assume, since the record does not show otherwise, that AEL is either "licensed to do business or is doing business" in the Southern District of New York. Before the enactment of § 1391(c) in 1948, the law was clear that for venue purposes a plaintiff corporation was deemed a resident only of the state in which it was incorporated. Suttle v. Reich Bros. Const. Co., 333 U.S. 163, 166, 68 S.Ct. 587, 92 L.Ed. 614 (1948). After the 1948 change, the question became whether this rule was altered by § 1391(c) so that both plaintiff and defendant corporations are deemed residents of any district where they are doing business, or whether § 1391(c) applies only to defendant corporations, leaving the law unchanged as to the corporate plaintiff. While this question has resulted in a split of authority among many Courts which have considered it, see Lumbermens Mutual Cas. Co. v. South Portland Engineering Co.,

---

2. The contract sued upon in this case was apparently made in Pennsylvania and was to be performed in Pennsylvania. It expressly provides that it "shall be governed by the laws of the Commonwealth of Pennsylvania" so that it does not appear that the claim asserted in this case arose in New York.

252 F.Supp. 149, 151–152 (S.D.N.Y. 1966), this Court held in Abbott Laboratories v. Celebrezze, 228 F.Supp. 855, 858–860 (D.Del.1964), vacated 352 F.2d 286 (C.A. 3, 1965), rev'd sub. nom. Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) that § 1391(c) applies only to corporations appearing as defendants and not to plaintiff corporations. In that case, Chief Judge Wright stated:

> "This court is persuaded by those who argue that Congress did not intend the sweeping change which plaintiffs assert and that for purposes of 28 U.S.C. § 1391(c) residence is defined only for corporate defendants." 228 F.Supp. at 860.

■ Applying this law to the present facts, the Court concludes that § 1391(c) is inapplicable to this case and that AEL, the corporate plaintiff, even if it does business in New York, cannot be deemed to be a resident of the Southern District of New York for venue purposes. Since the Southern District of New York is neither the residence of the AEL, the corporate plaintiff, or Dopp, the individual defendant, venue would be improper in that District under § 1391(a).

Furthermore, since venue could not properly be laid in the New York Court, the present case could not have been brought there initially. Consequently, this Court is powerless under § 1404(a) to transfer this action, upon defendant Dopp's motion, to the New York Court, a District in which AEL did not have a right to bring the suit in the first place because of improper venue. Hoffman v. Blaski, supra, 363 U.S. at 343–344, 80 S.Ct. 1084.

The Court therefore holds that since this suit, based solely on diversity, could not have been brought in the New York Court in the first instance because of lack of proper venue, this Court is powerless to transfer the case there under § 1404(a). Accordingly, Dopp's motion to transfer will be denied.

Submit order in accordance with this opinion.